IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DEBRA KAY HARPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 3:18-cv-637-SRW |
| ) | |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

On November 16, 2014, Plaintiff Debra Harper filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging that she became disabled on December 2, 2004.  The application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ issued an unfavorable decision dated June 26, 2017.  Plaintiff appealed that decision and the Appeals Council denied Plaintiff's request for review on May 3, 2018.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security.  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review of that

---

[1]  Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019, and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* section 205(g) of the Social Security Act, 42 USC § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

decision pursuant to 42 U.S.C. § 405(g). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 8, 9. Based on review of the parties' submissions, the relevant law, and the record as a whole, the court will affirm the Commissioner's decision.

## II. STANDARD OF REVIEW AND REGULATORY FRAMEWORK[2]

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence") (citations omitted). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing

---

[2] For purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, because that was the version of the C.F.R. in effect at the time Plaintiff filed a claim for benefits. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q.3.

court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a person must be unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3] To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. § 404.1520.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–1239 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238–1239. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242–1243. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239–1240.

The grids allow the ALJ to consider factors such as age, confinement to sedentary

---

[4] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id*. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

## III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was 58 years old at the time she filed her application for benefits, 53 years old as of the date last insured, and 61 years old at the time of the ALJ's decision. R. 19, 171, 186. Plaintiff is a resident of Camp Hill, Alabama. R. 37. She lives in a house with her husband. R. 38. She completed school through the fifth grade. R. 198.

Plaintiff alleged that her ability to work is limited by two heart attacks, foot problems, hand problems, severe migraines, high blood pressure, arthritis, hearing problems, vision problems, restless leg syndrome, and rheumatoid arthritis. R. 197. Plaintiff's past relevant work was as a weaver at a textile mill. R. 40, 46, 198. The ALJ found that Plaintiff submitted a limited amount of medical evidence that dated before her date last insured. R. 17.

Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of December 2, 2004 through her date last insured of December 31, 2009[.]" R. 12. At Step Two, the ALJ found that "through the date last insured, the claimant had the following severe impairments: coronary artery disease associated with myocardial infarction and subsequent angioplasty, intermittent angina, chronic hypertension, a history of migraine headaches vs. chronic paroxysmal hemicrania[.]" R. 13. At Step Three, the ALJ found that "through the date last insured,

the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments[.]" *Id*. Next, the ALJ articulated Plaintiff's RFC as follows:

> Through the date last insured, the claimant had the residual functional capacity to perform a range of "light[5] work," as that term is otherwise defined in 20 CFR 404.1567(b). Specifically, the claimant could lift and carry up to 20 pounds occasionally, and up to 10 pounds frequently. She could push and pull within those same exertional limits. She could stand or walk for about six hours altogether, though not for more than two hours continuously, and she could sit for at least six hours out of an eight-hour workday, though not for more than two hours continuously. She could occasionally stoop, crouch, kneel, and climb ramps and stairs, but she could not crawl nor climb ladders, ropes, or scaffolding. She could perform tasks in an environment with no greater than a moderate degree of ambient noise. She could perform tasks not involving operation of vibrating tools or equipment. She could perform tasks that did not involve exposure to extreme temperature or exposure to workplace hazards such as unprotected heights and dangerous moving machinery. She could perform tasks not requiring the reading of anything more complex than simple labels or warning signs.

R. 14. At Step Four, based upon the testimony of a VE, the ALJ concluded that "through the date last insured, the claimant was unable to perform any past relevant work." R. 19. At Step Five, based upon Plaintiff's age, education, work experience, and RFC, the ALJ found that "through the date last insured . . . there were jobs that existed in significant numbers in the national economy that the claimant could have performed," such as a small products assembler, production line solderer, and wire worker. R. 20. Accordingly, the ALJ determined that Plaintiff "was not under a disability . . . at any time from December 2, 2004, the alleged onset date, through December 31, 2009, the date last insured[.]" R. 21.

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

## IV. DISCUSSION

On appeal, Plaintiff argues that the ALJ erred by "failing to discuss meaningfully how [her] classic migraine (with aura)/chronic paroxysmal hemicrania with intractable migraine would affect her ability to perform work," and by "failing to properly reject [her] pain testimony." Doc. 11 at 3–4.

1. Evaluation of Migraine Headaches

Plaintiff first argues that the ALJ failed to discuss her migraine headaches meaningfully in evaluating her claim for disability. *Id.* at 4. The ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546(c). Such "assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments." *Beech v. Apfel*, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000 (citing 20 C.F.R. § 404.1546)). It is not a physician but the ALJ who is charged with assessing a claimant's RFC at the administrative level. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c); *see also Castle v. Colvin*, 557 F. App'x 849, 853–854 (11th Cir. 2014) (finding that ALJ "properly carried out his regulatory role as an adjudicator responsible for assessing [the plaintiff's] RFC"). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection . . . [of the] 'medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

In this case, the ALJ found that Plaintiff's "history of migraine headaches vs. chronic paroxysmal hemicrania" was a severe impairment at step two. R. 13. The ALJ also considered Plaintiff's migraine headaches in the context of her RFC assessment. R. 13–18. The ALJ considered Plaintiff's testimony that she began experiencing migraine

headaches after an on-the-job head injury. R. 15, 41. Plaintiff related that she was not taking medication for her migraine headaches because the medication she had been taking elevated her blood pressure. *Id.* The ALJ also reviewed Plaintiff's treatment history with respect to migraine headaches in significant detail. For instance, the ALJ referenced Plaintiff's medical records from 2005 which included a negative review of symptoms, no complaints of migraines, and a normal neurological examination "reveal[ing] that she was alert and oriented times three." R. 16, 683. The ALJ noted instances where Plaintiff complained of migraine headaches, but also pointed to several normal neurological examinations. R. 15–18, 369, 386, 501, 696, 700, 707. The ALJ also noted that that Plaintiff had a normal CT scan of her head in 2010. R. 16–18, 310, 599.

Ultimately, the ALJ concluded that Plaintiff's migraine headaches did not cause disabling limitations. R. 17. Pointing to the ALJ's ultimate conclusion only, Plaintiff argues that the ALJ's evaluation of her migraine headaches was too brief to show adequate consideration. Doc. 11 at 7. However, Plaintiff reads the ALJ's decision too narrowly. The ALJ's decision contains a thorough consideration of the record evidence, including Plaintiff's testimony, a third-party opinion from her husband, the opinion of her treating physician, Plaintiff's treatment history with respect to migraines, the results of objective testing, and the medications she was prescribed, including side effects.

Plaintiff points to evidence in the record that she believes supports greater limitations than those found by the ALJ. *Id.* at 4–7. However, in doing so, Plaintiff effectively asks the court to reweigh the evidence, which is not the court's role. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that [the plaintiff] points to other evidence which would undermine the ALJ's RFC determination, her contentions

8

misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from re-weighing the evidence or substituting our judgment for that of the Commissioner even if the evidence preponderates against the decision.")(internal quotations and footnotes omitted).

Moreover, Plaintiff has failed to point to any evidence in the record that she suffers a *functional limitation* due to her migraine headaches. "[T]he mere diagnosis of [a condition] says nothing about the severity of the condition." *Crans v. Berryhill*, No. 3:16-cv-914, 2017 WL 4683933, at *5 (M.D. Ala. Oct. 18, 2017) (quoting *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)); *see also Osborn v. Barnhart*, 194 F. App'x 654, 662 (11th Cir. 2006) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.") (quoting *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986)). Indeed, as the ALJ noted, Plaintiff's treating physician did not attribute any functional limitations to her migraine headaches. R. 16, 682, 715.

For the reasons outlined above, the court concludes that the ALJ appropriately considered Plaintiff's migraine headaches. The ALJ's decision shows that he evaluated the medical and other evidence to determine what limitations Plaintiff had from migraine headaches. Plaintiff has not demonstrated that she had additional limitations caused by migraine headaches that were not accounted for in the ALJ's RFC finding limiting her to light work with additional postural, environmental, and mental limitations. Accordingly, the court concludes that Plaintiff has failed to establish that remand is warranted for additional consideration of her migraine headaches.

2. Subjective Complaints of Pain

Next, Plaintiff argues that the ALJ "erred by failing to properly reject [her] pain testimony." Doc. 11 at 4, 9–11. Specifically, Plaintiff argues that her pain testimony with respect to her migraine headaches finds "strong corroborative support from the medical evidence" of record. *Id.* at 11.

In this circuit, to demonstrate that pain or symptoms of an underlying medical condition render her disabled, a plaintiff must satisfy what has come to be known as the "pain standard." *Mack v. Comm'r of Soc. Sec.*, 420 F. App'x 881, 883 (11th Cir. 2011); *see also Vonboeckman v. Colvin*, No. 5:13-cv-1401-SLB, 2014 WL 6239598, at *5 (N.D. Ala. Nov. 13, 2014); SSR 96-7p, 1996 WL 374186 (July 2, 1996). Under that standard, the plaintiff must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards*, 937 F.2d at 584 (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If an ALJ discredits subjective testimony on pain, "he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d at 1054).

Here, in evaluating Plaintiff's subjective complaints of pain, the ALJ generally found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record." R. 17. The ALJ correctly observed that, "[t]he available evidence during the relevant period of adjudication is somewhat meager." *Id*. However, the ALJ acknowledged

that Plaintiff had "chronic issues" including "periodic headaches that were sometimes called 'migraines' and at other times called paroxysmal hemicranias." *Id*. The ALJ nevertheless found that these impairments were not disabling because they did not demand "medical intervention on greater than a monthly basis." *Id*. As discussed above, the ALJ also considered Plaintiff's treatment history related to migraine headaches throughout the decision, observing normal neurological examinations and a normal head CT scan. R. 13–18.

In addition, the ALJ found that Plaintiff's reported daily activities undermined her claim of disability. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010) (an ALJ may consider a claimant's daily activities as a factor when evaluating the claimant's symptoms). In this case, the ALJ found as follows:

> The undersigned notes that the claimant's daily activities are not such as to strongly support a finding of disability. The claimant reported that, during the day, she watches TV, cleans the house, prepares food, does laundry, and sometimes picks up her grandchild from daycare. She has no problems with her personal care. She needs no special reminders to take care of personal needs and grooming. She needs no reminders to take medication. She prepares her own meals. She goes outside two to three times a day. When she travels, she drives and she can go out alone. She goes shopping in stores for groceries and household items. She is able to pay bills and count change. She spends time with others visiting and talking on the phone twice a week. She does not need anyone to accompany her. She had no problems getting along with family, friends, or neighbors. She follows spoken instructions, okay. She gets along well with authority figures; she has not been fired from a job because of problems getting along with others; and she can handle stress and changes in routine, okay … . In conclusion, the undersigned finds the evidence, facts, claimant behavior and activity indicative that the claimant's impairments are not as disabling as alleged during the applicable period.

R. 18.

Plaintiff contends that the ALJ erred in relying on her statement of activities of daily living. Doc. 11 at 10. She argues that the function report in which she reported her daily

activities did not ask her "to explain the problems in functioning she experienced when she got a classic migraine." *Id.* The court finds Plaintiff's argument unpersuasive. The purpose of the function report is to determine how Plaintiff's impairments affect her ability to perform activities of daily living, and the form specifically requested her to indicate what limitations in functioning she experienced due to her impairments. R. 223 (requesting Plaintiff to indicate what activities her illnesses, injuries, or conditions affect). If Plaintiff's migraines affected her ability to perform certain activities, it was incumbent upon her to say so. Notably, Plaintiff did not attribute any functional limitations to migraine headaches, and the court finds that it was not error for the ALJ to consider Plaintiff's reported daily activities in assessing the credibility of her subjective complaints.

Plaintiff also argues that the ALJ erred by not specifically mentioning that the function report was completed by Plaintiff's husband, rather than by her personally. Doc. 11 at 10. Plaintiff fails to explain, however, why this fact would change the veracity of the statements or preclude the ALJ from relying on them. Although Plaintiff's husband signed the form indicating that he had completed it, the responses were written in the first person as if they were Plaintiff's own responses. The court concludes that Plaintiff has not demonstrated that the ALJ erred in relying on the function report or in failing to mention specifically that it was completed by Plaintiff's husband.

Finally, Plaintiff appears to challenge the ALJ's decision to afford little weight to a separate third-party opinion offered by Plaintiff's husband. Doc. 11 at 10–11. Plaintiff's husband said that "she should receive disability benefits because of her many health issues," including migraine headaches. R. 680. The ALJ considered the opinion, but discounted it because it was "based on casual observation rather than objective medical

12

and psychological testing" and because it was inconsistent with the medical evidence of record. R. 14–15. Plaintiff does not address the ALJ's finding other than to argue that there is evidence to support her husband's opinion. Again, it is not the court's pereogative to reweigh the evidence. The fact that another conclusion may be reasonable from the record is not a basis for remand. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not … whether the ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it.").

The court finds no error in the ALJ's evaluation of Plaintiff's subjective complaints of pain. The ALJ sufficiently discharged his duty in reviewing the medical evidence and determining whether and how Plaintiff's impairments affect her ability to work. The ALJ's decision articulates the basis for the RFC and cites to substantial supporting evidence in the record. The court discerns no legal error in the ALJ's consideration of the evidence of record, nor in his explanation of the decision. Accordingly, because the Commissioner's decision is supported by substantial evidence and the proper legal standards were applied, it is due to be affirmed.

## V. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the Commissioner's decision will be affirmed. A separate judgment will issue.

DONE, on this the 25th day of November, 2019.

/s/ Susan Russ Walker  
Susan Russ Walker  
United States Magistrate Judge